493 S.E.2d 107

**James Donald SMOTHERS, Jr., Appellant,**

v.

**RICHLAND MEMORIAL HOSPITAL, J. Jeffrey Brown, M.D., Louis Viamontes, M.D., McCrea Ewart, M.D., and Joint Underwriting Association (JUA), of whom, Richland Memorial Hospital, J. Jeffrey Brown, M.D., and Joint Underwriting Association (JUA) are, Respondents.**

No. 2738.

Court of Appeals of South Carolina.

Heard Sept. 10, 1997.
Decided Oct. 20, 1997.

J. Edward Bell, III, and Eugene C. Fulton, Jr., both of Bell & Moore, Sumter, for appellant.

William L. Pope and Roy F. Laney, Columbia, for Respondents J. Jeffrey Brown, M.D. and Joint Underwriting Association (JUA); and Charles E. Carpenter Jr., George C. Beighley, William C. McDow, Jr., and Deborah Harrison Sheffield, all of Richardson, Plowden, Carpenter & Robinson, Columbia, for Respondent Richland Memorial Hospital.

STILWELL, Judge:

James Donald Smothers, Jr. appeals the trial court's determination that a prior release of claims precludes the present medical malpractice action. We affirm.

## FACTUAL BACKGROUND

On October 23, 1981, Smothers was involved in an automobile accident which required emergency surgery at Richland Memorial Hospital (Hospital). Doctor J. Jeffrey Brown, accompanied by resident physicians Louis Viamontes and McCrea Ewart, performed the surgery during which Smothers's severed right hepatic artery and right hepatic duct were repaired. Smothers was later readmitted to the hospital with fever and abdominal pain, and tests revealed that a laparotomy pad had been left inside him during the emergency surgery. Further surgery was required to remove the pad.

Because of the doctors' failure to remove the pad, Smothers filed a medical malpractice lawsuit against Hospital and the doctors on October 7, 1983. A settlement agreement between the parties was signed in March 1984, with Smothers receiving $32,000. The "RECEIPT AND GENERAL RELEASE IN

FULL," which was signed by Smothers and approved by his attorney,[1] provided in pertinent part:

I, James Donald Smothers, Jr.... do hereby ... release, acquit and forever discharge [Defendants] ... from any and all claims, demands, ... actions, causes of action, damages, ... now existing or which may hereafter accrue, and all known and unknown, foreseen and unforeseen, bodily and personal injuries and the consequences thereof resulting, which heretofore have been, and which hereafter may be sustained by the undersigned, as a result of an occurrence ... which happened or occurred [from October 1981 through January 1982] when I was a patient at Richland Memorial Hospital and received certain medical care for injuries I received in an automobile accident, including the retention of a laparotomy pad in my abdomen....

. . . .

This full and final release shall cover and shall include and does cover and does include, any and all future injuries, death and/or damages not now known to any of the parties hereto, but which may later develop or be discovered, including the effects and consequences thereof, and including all causes of action therefor.

The undersigned further declares and represents that no promise, inducement, or agreement except as herein expressed has been made to the undersigned and that this release contains the entire agreement between the parties hereto, and the terms of this release are contractual and not a mere recital.

In September 1992, contending that a surgical clip had been improperly left in his body during the October 1981 surgery,[2] Smothers brought the present medical malpractice claim against the same defendants and Joint Underwriting Associa-

---

1. Smothers was represented by a different attorney in the prior lawsuit.

2. Smothers testified that in October 1991 he began to suffer medical problems again. He stated that after tests and x-rays were performed, doctors determined that a surgical clip in his body was causing his problems and that it would have to be removed. From the time of the 1984 settlement to the filing of the present lawsuit, Smothers had medical problems unrelated to the surgery at issue.

tion, the insurer of Dr. Brown.[3] Smothers claimed the prior release should be rescinded based on mutual mistake or negligent misrepresentation or both. The issues of rescission and malpractice liability were bifurcated for separate trials with the issue of rescission heard first non-jury.[4] The trial court determined that the prior release barred the medical malpractice claim. This appeal followed.

## SCOPE OF REVIEW

An action to rescind a release is in equity. *Smothers v. United States Fidelity & Guar. Co.,* 322 S.C. 207, 470 S.E.2d 858 (Ct.App.1996). On appeal in an equitable action tried by a judge alone without a reference, the appellate court can correct errors of law and can find facts in accordance with its view of the evidence. *Gray v. South Carolina Pub. Serv. Auth.,* 284 S.C. 397, 325 S.E.2d 547 (1985). However, this broad scope of review does not require us to disregard the findings of the trial judge who was in a better position to evaluate the credibility of witnesses. *Cherry v. Thomasson,* 276 S.C. 524, 280 S.E.2d 541 (1981). Furthermore, in order to rescind an instrument on the grounds of mistake, the proof must be by evidence that is clear and convincing. *Blanton v. Blanton,* 284 S.C. 250, 325 S.E.2d 340 (Ct.App.1985).

## I.

Smothers first contended the trial court erred in refusing to allow a jury to determine the issue of rescission of the release. At oral argument, however, Smothers waived the mode of trial issue in light of the recent supreme court case of *Gaymon v. Richland Memorial Hospital,* 327 S.C. 66, 488 S.E.2d 332 (1997) (holding that an equitable estoppel defense interposed in a law case should be tried by the court as an equitable issue even though it may involve a question of fact).

---

**3.** Prior to trial, Smothers voluntarily dismissed Dr. Viamontes and Dr. Ewart as defendants.

**4.** Dr. Brown filed a motion for bifurcation. A written order granting the motion was not prepared, but the parties consented to continuing in the absence of a written order.

## II.

Smothers next argues the trial court erred in refusing to rescind the release based on mutual mistake.

■ In determining the standard in South Carolina regarding rescission of a release for personal injuries on the ground of mistake, our supreme court held:

> If there is to be avoidance of a release on the ground of mistake, it must be based upon a finding of unknown injuries that were in existence and were not within the contemplation of the parties when the settlement was agreed upon. But if the parties did in fact intentionally agree upon a settlement for unknown injuries, the release will be binding.

*Gecy v. Prudential Ins. Co. of Am.,* 273 S.C. 437, 441, 257 S.E.2d 709, 711 (1979) (quoting *Schmidt v. Smith,* 299 Minn. 103, 216 N.W.2d 669, 672 (1974)).

In *Gecy* the language of the release was very similar to that found in the present case. The plaintiff released "all actions, claims and demands whatsoever, that now exist or may hereafter accrue ... [and the release was to] apply to unknown and unanticipated injuries...." *Id.* at 440, 257 S.E.2d at 711. For purposes of that case, the court assumed that a mutual mistake as to the existence of an unknown injury existed. Nevertheless, because the plaintiff failed to plead or present evidence to establish that the release was not intended to cover unknown injuries, the court looked solely to the language of the agreement and determined that the parties intended unknown injuries to be released. *Id.* at 442, 257 S.E.2d at 711–12.

In the present case, the trial court determined that Smothers failed to prove either that a mutual mistake had occurred or that the parties did not intend the release to cover unknown injuries. We agree.

■ Smothers claims respondents were unaware that a surgical clip had been left in his body and that the clip is the unknown injury in existence and not within the contemplation of the parties when the settlement was entered. Smothers testified that after the pad was removed, Dr. Brown assured him the pad had been removed, everything was out that

should be out, and Smothers should recover with no problem. Smothers stated that no one ever mentioned that a surgical clip was left inside his body.

Smothers also testified that in signing the release, he only intended to release respondents from damage caused by the pad. He claims that had he known about the surgical clip, he would never have signed the release. Smothers stated that he did not ask questions about the language used in the release and he interpreted the "unknown injury" language to mean any problems arising due to the pad being left inside him. Smothers further testified that he specifically asked his attorney whether the release covered only the pad, and he claims the attorney responded affirmatively.

Dr. Brown testified that he did tell Smothers the pad had been removed with nothing else being left behind. However, he stated that surgical clips are used to control bleeding and are left in the body permanently. He stated that he knew the clip had been left inside Smothers's body. He further stated that he believed the release was intended to prevent Smothers from bringing any future lawsuit.

Based on the testimony presented, we believe Smothers failed to present clear and convincing evidence that a mutual mistake warranting rescission occurred. *Gecy* requires the alleged injury to be unknown at the time the release is signed, and Dr. Brown testified that he knew the clip was left inside Smothers.

Furthermore, although this case differs somewhat from *Gecy* in that Smothers did plead and did testify that he did not intend the release to cover unknown injuries, we believe Smothers failed to carry his burden of proof, with the evidence revealing that the parties did intentionally agree upon a settlement for unknown injuries. Smothers was represented by an attorney during settlement negotiations,[5] and he reviewed the release at his attorney's office with no one from the opposing side present. Even though Smothers testified that he specifically asked his attorney [6] whether the release applied

---

**5.** Smothers's attorney had been negotiating with the insurance carrier whose previous settlement offer of $25,000 was declined by Smothers.

**6.** We note that the attorney did not testify concerning Smothers's intent.

solely to the pad, both he and his attorney read and signed the release which clearly and unambiguously refers to unknown injuries. Furthermore, we believe the prior $32,000 settlement is not so inadequate that it reveals an intent for the release to cover only the pad.

### III.

Smothers also contends the trial court erred in failing to rescind the release based on misrepresentation. Again, we disagree.

While Smothers points to the general rule that a contract may be rescinded based on a unilateral mistake that has been induced by the fraud or misrepresentation of the party opposing rescission without negligence on the part of the party seeking rescission, he has failed to present evidence that a misrepresentation has occurred. *See Smothers,* 322 S.C. at 210, 470 S.E.2d at 860. Smothers contends Dr. Brown's statements that there is "nothing else left in you that shouldn't have been left in you" and that Smothers should not have any more problems are material misrepresentations upon which he relied when executing the release. However, Dr. Brown testified that he intended to leave the surgical clip in Smothers's body, and Smothers failed to prove this was a false statement. Furthermore, Smothers failed to prove that Dr. Brown's statement about Smothers's future condition was more than an honest expression of opinion. *See Lawton v. Charleston & W.C. Ry. Co.,* 91 S.C. 332, 74 S.E. 750 (1912) (statements that are merely honest opinions do not constitute misrepresentations warranting rescission).

Accordingly, the trial court's order is

AFFIRMED.

CURETON and HEARN, JJ., concur.